UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAMES LAFOREST, HENRIETTA LAFRINERE,
ROBERT LINTZ, RALPH MINER, LAVERNE
SPENCER and IRENE WESOLOWSKI,
individually and as a class of persons similarly
situated,

                    Plaintiffs,

                                        Case No. 03-CV-6248T

-vs-

HONEYWELL INTERNATIONAL, INC.,               Honorable Michael A. Telesca
a Delaware corporation,                           U.S. District Judge

            Defendant/Third-Party Plaintiff,

                                        Honorable Marian W. Payson
-vs-                                        U.S. Magistrate Judge

MOTOR COMPONENTS, L.L.C., BAM
ENTERPRISES, INC., MARK IV INDUSTRIES,
INC., and ARVINMERITOR, INC.,

                Third-Party Defendants

_____/

## SETTLEMENT AGREEMENT

      This agreement is between Defendants and the Class Representatives (these and certain other

capitalized terms have the meanings given them in the definition paragraph below).  It settles all

claims that hourly retirees and surviving spouses from three former Bendix plants in Michigan and

Elmira, New York have against Defendants based on the Bendix Guaranty allegedly having been

triggered on September 1, 2002 when Motor Components modified their health care and life

insurance benefits.

## TABLE OF CONTENTS

1.  Definitions...................................................................................................4

    1.1  Authorized Claim.................................................................4
    1.2  Bendix Guaranty..................................................................4
    1.3  Class....................................................................................4
    1.4  Class Counsel......................................................................5
    1.5  Class Member......................................................................5
    1.6  Class Representatives..........................................................5
    1.7  Common Fund......................................................................5
    1.8  Court....................................................................................5
    1.9  Defendants...........................................................................5
    1.10 Effective Date......................................................................6
    1.11 Final.....................................................................................6
    1.12 Judgment.............................................................................6
    1.13 Magistrate Judge.................................................................6
    1.14 Modified Honeywell Program..............................................6
    1.15 Parties..................................................................................7
    1.16 Post 10/23/95 Class Members..............................................7
    1.17 Post 10/23/96 Class Members..............................................7
    1.18 UAW....................................................................................7
    1.19 UAW-Honeywell Program...................................................7

2.  Description of the Litigation.......................................................................7

3.  Discovery Summary....................................................................................9

4.  Benefits of Settlement...............................................................................10
    4.1 To the Class........................................................................10
    4.2 To Defendants....................................................................10

5.  No Admissions..........................................................................................10

6.  Order and Notice of Preliminary Approval...............................................11

7.  Judgment to be Entered Approving the Settlement ...................................11

8.  Releases and Related Matters...................................................................11

9.  Health Care Benefits ...............................................................................12

10. Life Insurance Benefits ...........................................................................14

11.   Duration and Level of Health and Life Insurance Benefits...................................................15

12.   Modification of Class Member Lists and Amounts In Exhibits H and I ..........................16

13.   Dispute Resolution.......................................................................................................17

14.   Common Fund .............................................................................................................18

15.   Costs and Attorneys' Fees ..........................................................................................22

16.   Conditions of Settlement ...........................................................................................22

17.   Effect of Disapproval and Termination ....................................................................23

18.   Miscellaneous Provisions............................................................................................23

1.    *Definitions*

    1.1    *Authorized Claim* means a timely and appropriately documented claim as described in

¶¶ 14.2 and 14.4.

    1.2    *Bendix Guaranty* means the April 1, 1976 guaranty, which is Exhibit A.

    1.3    *Class* means the individuals in the following groups:

Subclass A    All persons, including Class Representatives James Laforest and Irene Wesolowski, who retired and were receiving a benefit under the Bendix Hourly Employees Pension Plan from the Bendix Elmira, New York, Detroit, Michigan or Madison Heights, Michigan facilities on or before April 1, 1976.

Subclass B    All persons, including Class Representatives Robert Lintz, Ralph Miner, and Laverne Spencer, who were employees of the Elmira, New York, Detroit, Michigan or Madison Heights, Michigan facilities with 10 years of credited service under the Bendix Hourly Employees Pension Plan on or before April 1, 1976 and have since either retired or are eligible to retire.

Subclass C    Spouses, surviving spouses and eligible dependents of persons within Subclass A or Subclass B, including Class Representative Mary Ala (substitute for Henrietta Lafrinere).

    For purposes of this definition, deferred vested retirees, other than Jennie Fontella, are excluded. For purposes of this definition, "Bendix Hourly Employees Pension Plan" means the pension plan applicable to the hourly employees covered by the master collective bargaining agreement between Bendix and the UAW effective April 16, 1974. For purposes of this definition, in Subclass C: 1) "surviving spouse" means a surviving spouse of a retiree who is receiving or is eligible to receive, a survivor's benefit under the Bendix Hourly Employees Pension Plan, or is the surviving spouse of a deceased retiree who was receiving a pension under the Bendix Hourly Employees Pension Plan prior to his or her death; 2) "spouse" means the wife or husband of a retiree; and 3) "eligible dependent" means a) a retiree's dependent and unmarried children until age 19, or b)

4

a retiree's children under age 25, or any age if permanently and totally disabled, who are unmarried, legally residing with and dependent on the retiree for more than one half of their support, as defined by the Internal Revenue Code, and who either qualify in the current year for dependency tax status or have been reported as a dependent on the retiree's most recent tax return.

1.4    *Class Counsel* means William A. Wertheimer, Jr., 30515 Timberbrook Lane, Bingham Farms, Michigan 48025, and Roger McClow, 400 Galleria Officentre, Suite 117, Southfield, Michigan 48034.

1.5    *Class Member* means a member of the Class who was living on September 1, 2002. This definition is intended to include a person who meets the definition of "eligible dependent" as set forth in ¶1.3, but only so long as that person continues to meet that definition. A list of Class Members as of the Effective Date is attached as Exhibit F.

1.6    *Class Representatives* means James LaForest, Robert Lintz, Ralph Miner, Laverne Spencer, Irene Wesolowski and Mary Ala. The Class Representatives of Subclass A are James Laforest and Irene Wesolowski. The Class Representatives for Subclass B are Robert Lintz, Ralph Miner, and Laverne Spencer. The Class Representative for Subclass C is Mary Ala.

1.7    *Common Fund* means the money that Honeywell is responsible to contribute, which will be used for the payment of Authorized Claims.

1.8    *Court* means the United States District Court for the Western District of New York.

1.9    The *Defendants* means, collectively, Honeywell International Inc. ("Honeywell"), BAM Enterprises, Inc. ("BAM"), Motor Components, LLC ("Motor Components"), Mark IV Industries, Inc. ("Mark IV"), Purolator Products Company, LLC ("Purolator"), and ArvinMeritor, Inc. ("ArvinMeritor").

5

1.10    *Effective Date* means (i) the date 31 days after the Judgment is entered, provided there is no pending appeal, and no motion has been filed that would extend the time to appeal; or (ii) if there is a pending appeal or motion, the date the Judgment becomes Final. If there is a pending appeal 31 days after the Judgment is entered, counsel for the Defendants and Class Counsel will send to each Class Member a joint letter describing the status of this agreement.

1.11    *Final* means the earlier of (i) expiration of the time period for an appeal as of right if no appeal has been filed; (ii) any final dismissal or withdrawal of all appeals from the Judgment; or (iii) the date of final affirmance of the Judgment following any appeal, including the expiration of the time for petitions for writs of certiorari (or written confirmation by the appellants that no such petition will be filed) and, if certiorari is granted, the date of final affirmance of the Judgment.

1.12    *Judgment* means the final judgment of the Court approving this agreement substantially in the form of Exhibit B.

1.13    *Magistrate Judge* means Magistrate Judge Marian Payson, or, if she is not available, another Magistrate Judge in the United States District Court for the Western District of New York.

1.14    *Modified Honeywell Program* means the UAW-Honeywell Program with the following exceptions: (1) the co-payment per prescription (up to a 30 day supply) will be $2 for generic drugs and $4 for brand name drugs; (2) neither dental expense benefits, vision expense benefits, nor hearing expense benefits will be provided; and (3) the contribution limits contained in Part VI of the May 3, 2003 agreement regarding insurance between Honeywell and the UAW (therein titled Exhibit B, at 61-63) will not apply. The Modified Honeywell Program provides substantially the same benefits as the pre-September 1, 2002 Motor Components program (full health insurance at no cost to the participant other than the co-pays for prescription drugs) with the

6

exceptions that office visits are not covered and the lifetime maximum for health and prescription drug coverage is $1,000,000.

      1.15    *Parties* means the Defendants and the Class Representatives.

      1.16    *Post 10/23/95 Class Members* means those Class Members who retired after October 23, 1995 and before October 23, 1996, under the October 23, 1995 collective bargaining agreement between Purolator Products Company and the UAW. Exhibit G lists the Post 10/23/95 Class Members.

      1.17    *Post 10/23/96 Class Members* means those Class Members who retired after October 23, 1996, under the October 23, 1995 or the October 23, 1998 collective bargaining agreements between Purolator Products Company and the UAW, or the October 18, 2001 extension agreement between Motor Components and the UAW. Exhibit G lists the Post 10/23/96 Class Members.

      1.18    *UAW* means the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America.

      1.19    *UAW-Honeywell Program* means the health insurance program provided for in the May 3, 2003 collective bargaining agreement between the UAW and Honeywell.

2.    *Description of the Litigation*

      2.1    In 2002 the Class Representatives brought an action against Honeywell in the United States District Court for the Eastern District of Michigan, Civil No. 02-CV-73463-DT, seeking to enforce the Bendix Guaranty. They alleged that Honeywell was the successor to Bendix and that their rights under the Bendix Guaranty were triggered when, on September 1, 2002 Motor Components modified their health care and life insurance benefits by: 1) eliminating life insurance benefits; 2) requiring those who were Medicare-eligible to pay a monthly co-pay of $25 for health

care; 3) eliminating health care coverage for those who were non-Medicare-eligible, while providing

a payment in lieu thereof of $125 a month; 4) increasing the co-pays for prescription drugs from $0

for generic and $3 for brand to $15 for generic, $40 for preferred brand and $60 for non-preferred

brand; and 5) adding to the drug program an annual deductible of $100 and an annual maximum of

$3,000.  The Class Representatives sought: (1) injunctive relief requiring Honeywell to provide the

Class with health care and life insurance benefits at pre-September 1, 2002 levels; (2) damages for

the obligations incurred by the Class Members as a result of Honeywell's failure to provide these

benefits at guaranteed levels; (3) damages for mental distress and anguish; and (4) attorney fees and

costs.  They asserted that Honeywell had breached the Bendix Guaranty in violation of Section 502

of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1132, and Section 301 of

the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185, and that Honeywell was estopped

from attempting to avoid its obligation to perform under the Bendix Guaranty.  Honeywell denied

that it had breached the Bendix Guaranty and asserted certain affirmative defenses, while asserting

third-party claims for reimbursement and indemnification against BAM, Motor Components,

Purolator, Mark IV, and ArvinMeritor under agreements between Bendix and Facet in 1976 and

1979. BAM, Motor Components, Purolator, Mark IV, and ArvinMeritor denied that they were liable

to reimburse or indemnify Honeywell.

    2.2    Plaintiffs also filed a Third-Party Complaint against Motor Components, BAM, Mark

IV, and ArvinMeritor, claiming that certain "collective bargaining agreements" created a right to

lifetime benefits.  The Court subsequently dismissed Plaintiffs' Third-Party Complaint without

prejudice.

2.3    In May 2003 this action was transferred to this Court, pursuant to 28 U.S.C. §1404(a), and became Civil No. 03-CV-6248T.

2.4    On August 7, 2003 the Court granted the Class Representatives summary judgment on the issue of liability as to their LMRA contract claims.  2003 WL 22103474.

2.5    On September 19, 2003 the Court issued a preliminary injunction ordering Honeywell to comply with the Bendix Guaranty.  2003 WL 23180220.

2.6    On December 11, 2003 the Court granted the Class Representatives summary judgment on the issue of liability as to their ERISA contract claims.

2.7    On February 24, 2004 the Court certified the Class.

2.8    On July 15, 2004 the United States Court of Appeals for the Second Circuit affirmed the judgments of the District Court described at ¶¶ 2.4 and 2.5, but remanded for clarification and modification of the preliminary injunction with respect to the proper level of benefits and who should be covered by that relief.  376 F.3d 48 (2d Cir. 2004).

2.9    On August 27, 2004 the Court dismissed the Class Representatives' request for mental distress damages and their estoppel claims.  2004 WL 1925490.

2.10    On January 26, 2005 United States Magistrate Judge Marion W. Payson ordered the Parties to appear for a settlement conference and since that date, has facilitated the Parties' efforts at settling this matter.

2.11    Honeywell, BAM, Motor Components, Mark IV, Purolator, and ArvinMeritor have reached agreements resolving their differences, which are or will be memorialized in separate documents.

3.    *Discovery Summary*

9

The Parties have completed discovery, including, among other things, taking numerous depositions and an extensive exchange and review of documents.

4.    *Benefits of Settlement*

4.1    *To the Class*. In deciding to enter into this agreement, the Class Representatives and Class Counsel recognize that further proceedings might be lengthy, that there are various possible outcomes to the issues that the Second Circuit has remanded and to certain damage issues. The Class Representatives and Class Counsel have determined that it is beneficial to all Class Members that their claims be settled on the terms set forth herein.

4.2    *To the Defendants*. The Defendants have concluded that the further litigation of this action would be protracted, expensive and subject to variable outcomes. Absent settlement, substantial resources would continue to be spent in the defense of the claims asserted on behalf of Class Members. The Defendants have determined that it is beneficial that all claims of the Class be settled on the terms set forth herein.

5.    *No Admissions*

5.1    The Defendants continue to deny any wrongdoing or legal liability arising out of the claims against them in this action. Neither this agreement, nor any document referred to herein, nor any action effectuating this agreement may be construed as an admission of wrongdoing or liability by any of the Defendants.

5.2    The Class Representatives have contended and continue to contend, that the claims made on behalf of the Class are meritorious. This agreement may not be construed as an admission by the Class that their claims in any way lack merit.

5.3    The negotiation and implementation of this agreement may not be construed as an admission by any Party. This agreement shall not be introduced in evidence in any proceeding against any party hereto in any court or agency or other tribunal for any purpose except to secure Court approval of this agreement or to enforce its provisions.

6.    *Order and Notice of Preliminary Approval*

6.1    The parties will submit this agreement to the Court and seek an order of preliminary approval, substantially in the form of Exhibit C, providing that the action described in ¶ 2.1 will be stayed and for notice to the Class of the hearing on the proposed settlement. Following entry of this order, Class Counsel will (i) mail a copy of the notice to each Class Member; and (ii) submit a proof of such mailing to the Court. The notice will include a copy of this agreement and a cover letter summarizing the proposed settlement and stating the position of the Class Representatives and Class Counsel. The notice and cover letter will be substantially in the form of Exhibits D and E.

7.    *Judgment to be Entered Approving the Settlement*

After notice to Class members and a hearing and upon Court approval of this agreement, the parties will request that Judgment be entered substantially in the form of Exhibit B.

8.    *Releases and Related Matters*

8.1    Upon the Effective Date, each of the Class Representatives releases and discharges any and all rights, claims or causes of action, whether known or unknown, which any of them has or may have against each Defendant, its parents, subsidiaries, affiliates, and its and their officers, directors, shareholders, employees and agents, its and their respective successors and assigns, heirs, executors, and administrators (the "Releasees"), that are based on the Bendix Guaranty, that relate to health or life insurance benefits under the "collective bargaining agreements" referred to in Plaintiffs'

Third Party Complaint, or that involve the same or similar claims or allegations as this litigation, which have arisen or could have arisen up to and including the Effective Date.

       8.2     Upon the Effective Date, the Releasees will be released and discharged from any and all rights, claims or causes of action, whether known or unknown, which any Class Member has or may have against the Releasees that are based on the Bendix Guaranty, that relate to health or life insurance benefits under the "collective bargaining agreements" referred to in Plaintiffs' Third Party Complaint, or that involve the same or similar claims or allegations as this litigation, which have arisen or could have arisen up to and including the Effective Date. The Judgment will forever bar all Class Members from instituting or prosecuting, either directly or indirectly, any such claims or causes of action against the Releasees.

       8.3     The Parties do not waive any claim which may arise regarding enforcement of this agreement and the Judgment incorporating it.

9.     *Health Care Benefits*

       9.1     Honeywell will continue to provide health care benefits to those Class Members who have been covered pursuant to the preliminary injunction described at ¶ 2.4 until such Class Members are covered as described in ¶ 9.2.

       9.2     As of the Effective Date or as soon thereafter as is practicable, Honeywell will cover Class Members through the Modified Honeywell Program.

       9.3     All Class Members will be eligible to participate in the Modified Honeywell Program. A list of Class Members as of the Effective Date is attached as Exhibit F.

9.4     Post 10/23/95 Class Members shall be subject to annual FASB premium caps of $6,280 (pre-65) and $1,570 (post-65) with respect to their medical and prescription drug coverage under the Modified Honeywell Program. Exhibit G lists the Post 10/23/95 Class Members.

9.5     Post 10/23/96 Class Members shall be subject to the FASB premium caps described in ¶9.4, and also shall be required to pay 8% premium contributions toward the medical and prescription drug coverage under the Modified Honeywell Program.  Exhibit G lists the Post 10/23/96 Class Members.

9.6.     For purposes of determining the premium contributions required of Post 10/23/95 Class Members and Post 10/23/96 Class Members, Honeywell will use the claims experience for the entire group of retirees who participate in the UAW-Honeywell Program to develop premium rates for health and prescription drug coverage under the Modified Honeywell Program. Premium rates will be developed on a prospective basis.  That is, past experience will be analyzed and then projected forward to the applicable plan year.  Honeywell will obtain the most recent two years (24 months) of actual UAW-Honeywell Program retiree claims experience (separate for pre-65 and post-65 retirees) that is available and the average number of retirees and dependents covered during this period.  Honeywell will divide the claims by the covered lives to develop a per member cost, then apply prevailing health care trend factors to this cost to project to the applicable plan year period.  An adjustment will be made to this cost to reflect the difference in plan design between the UAW-Honeywell Program and the Modified Honeywell Program.  Lastly, an administrative fee will be added to this per member cost to develop the total annual projected per-member cost for medical and prescription drug coverage under the Modified Honeywell Program.

13

9.7    Monthly contributions for Post 10/23/95 Class Members will be zero, except if the annual projected per-member cost exceeds the applicable annual cap, in which case the contribution will be the difference between the annual projected per-member cost and the annual cap, divided by 12. Caps will be applied on a per person versus per family basis, meaning that there will be one cap per retiree and one cap per spouse, but no additional caps per any other dependents.

9.8    Monthly contributions for Post 10/23/96 Class Members will be 8% of the annual projected per-member cost up to the applicable annual cap plus (if the annual projected per-member cost exceeds the applicable annual cap) the difference between the annual projected per-member cost and the annual cap, divided by 12.

9.9    Not less than 60 days before the beginning of the each plan year, Honeywell will provide notice to Post 10/23/95 Class Members, Post 10/23/96 Class Members and Class Counsel regarding the required contributions for the upcoming plan year. If a request is received at least 30 days before the beginning of the plan year, Honeywell will respond to reasonable requests for information regarding the calculations used to arrive at the annual projected per-member cost and applicable contributions for Post 10/23/95 Class Members and Post 10/23/96 Class Members. If, after reviewing such information, Class Counsel believes that Honeywell's calculation is unreasonable or inconsistent with the terms of this Agreement, Class Counsel will promptly inform Honeywell of the basis for its objections. If Honeywell and Class Counsel are unable to resolve their differences, they shall submit their dispute for adjudication pursuant to the procedures set forth in paragraph 13.1.

10.    *Life Insurance Benefits*

14

10.1    Honeywell is responsible to pay the beneficiaries of all Class Members who have died since September 1, 2002 the amount of life insurance guaranteed by the Bendix Guaranty. Mark IV, on behalf of Honeywell, will make these payments. Exhibit H lists these Class Members with the amounts that Mark IV, on behalf of Honeywell, will pay.

10.2    Honeywell will provide life insurance coverage to all Class Members at the levels guaranteed by the Bendix Guaranty. Exhibit I lists these Class Members with the coverage amounts. Honeywell, in its sole discretion, shall decide whether to purchase life insurance coverage through an insurance carrier or whether to self-fund the benefits.

11.    *Duration and Level of Health and Life Insurance Benefits*

11.1    Honeywell will provide the health care benefits in the Modified Honeywell program for the lives of the Class Members, subject to the definition of Class Member set forth in ¶1.5.

11.2    Honeywell will provide these health care benefits at the level described at ¶ 9.2. Any changes in the Modified Honeywell Program or any future program through which Honeywell fulfills its commitments hereunder that affect the level of benefits will not be made applicable to any Class Member except for the following: (1) changes that are necessary to conform to future changes in the law; and (2) changes in the drug benefits necessary to meet the requirements of the Medicare D subsidy (as it may be amended) so long as the total benefits provided are equivalent to the benefits required to be provided under this agreement; and (3) changes that are necessary to coordinate with any state or national health insurance program, so long as the total benefits provided are equivalent to the benefits required to be provided under this agreement. In no event will Honeywell charge any Class Member with any out of pocket expenses other than the $2/4 prescription drug co-pays, including but not limited, to any deductibles, co-pays (other than the $2/4 prescription drug),

15

premium shares, yearly maximums or FASB caps (except as provided in ¶ 9). If Honeywell changes any provider of the Honeywell modified program, the new provider will administer the program and provide benefits expeditiously, accurately and in good faith. Benefits for Medicare-eligible participants will be coordinated with those offered by Medicare Part B (as it may be amended) or any future universal or national health care program. If a participant is eligible for Medicare Part B, Honeywell shall solely be required to provide benefits to such participant as if such participant were enrolled in Medicare Part B.

11.3     No reservation of rights clause contained in any summary plan description nor any future provision in any collective bargaining agreement between Motor Components or Honeywell or their successors, and the UAW, nor the absence of any provision, nor any other limitation will apply to the unconditional lifetime commitment described at ¶ 11.1 to provide health care benefits at the level described at ¶¶ 9.2 and 11.2.

11.4     Honeywell will pay the life insurance benefits described at ¶ 10.2 upon the death of the Class Member upon proper application within one (1) year of death.

11.5     Individuals currently covered by Honeywell for health insurance or life insurance, but who are not Class Members, shall have such coverage terminated effective October 1, 2005.

12.     *Modification of Class Member Lists and Amounts In Exhibits H and I Relating To Life Insurance*

12.1     If before June 1, 2006, the Defendants or Class Counsel believe that an individual has been erroneously included or excluded from Exhibit F, G, H or I, or if before January 1, 2006, the Defendants or Class Counsel believe that the amounts set forth in Exhibits H and I relating to life insurance are inaccurate, such belief will be brought to the attention of the other party. If the other

16

party does not agree as to the inclusion or exclusion, the disagreement will be resolved by the Magistrate Judge pursuant to the procedure spelled out in ¶ 13.1 below.

12.2    If before June 1, 2006, any individual claims that he or she has been erroneously excluded from Exhibit F, G, H or I, or if before January 1, 2006, any individual claims that the amounts set forth in Exhibits H and I relating to life insurance are inaccurate, but the Defendants and Class Counsel determine that he or she is properly excluded or the amounts are accurate, as applicable, the decision of the Defendants and Class Counsel will be final and binding.

12.3    No claims for inclusion or exclusion in Exhibits F, G, H or I will be considered that have not been presented in writing to Class Counsel and the Defendants before June 1, 2006.

12.4    No claims challenging the amounts set forth in Exhibits H and I relating to life insurance will be considered that have not been presented in writing to Class Counsel and the Defendants before January 1, 2006.

13.    *Dispute Resolution*

13.1    Should a dispute of any nature whatsoever arise concerning the compliance by any entity or person with any term of this Settlement Agreement or the Judgment, or concerning the interpretation of this Settlement Agreement or the Judgment (including, but not limited to, disputes relating to whether an individual is a spouse, surviving spouse or dependent of an Class Member for purposes of the Bendix Guaranty by applying the definitions set forth at ¶ 1.3, disputes relating to the level of benefits to be provided to Class Members pursuant to the criteria set forth in ¶ 11.2, disputes relating to a change in the provider of the Modified Honeywell Program pursuant to the criteria set forth in ¶ 11.2, disputes relating to contributions required of Post 10/23/95 Class Members and Post 10/23/96 Class Members pursuant to the criteria set forth in ¶ 9.6, and disputes relating to the

17

amounts set forth in Exhibits H and I relating to life insurance), it shall be resolved exclusively and mandatorily in the following manner:

13.1.1    The person or entity asserting the claim, violation or raising the question of interpretation shall serve written notice of same promptly, but in no event later than sixty (60) days after the date of occurrence of the circumstances giving rise to the claim, violation or question of interpretation, to Class Counsel and to counsel for the Defendants at the addresses listed in the signature block of this Settlement Agreement.

13.1.2    Class Counsel and counsel for the Defendants, with the participation of the person or entity raising the issue, if appropriate, shall promptly, and in no event later than twenty-eight (28) days after receiving the aforementioned notice, discuss the matter and attempt to reach an agreed resolution.

13.1.3    If no resolution is reached, the matter shall, within fourteen (14) days be submitted to the Magistrate Judge.

13.1.4    Once the Magistrate Judge has rendered a decision pursuant to this paragraph 13, that decision is final and binding, and there shall be no recourse for breach of this Agreement.

13.2    Any dispute or claim arising under or involving the application or interpretation of the Modified Honeywell Program or relating to any claim for benefits under the Modified Honeywell Program (excluding claims regarding whether a generally applicable plan design change violates the terms of this Agreement) shall be resolved initially through the appeal procedure set forth in the Modified Honeywell Program and thereafter through other procedures provided by law.

14.    *Common Fund*

14.1    The Common Fund will be $800,000 payable by Mark IV, on behalf of Honeywell. Mark IV will retain the $800,000 until Class Counsel requests the disbursement checks.

14.2    The Common Fund will be used to reimburse Class Members for (i) their claims for the cost of health care benefits (paid or owing) that would have been covered under the pre-September 1, 2002 Motor Components health program, and (ii) the cost of purchasing any health insurance coverage duplicating in whole or in part the coverage which Motor Components had been providing, but only to the extent not previously reimbursed by Honeywell or offset by the $125 a month payment paid by Motor Components as described at ¶ 2.1. The Common Fund will be the sole source from which Class Members may seek reimbursement for such claims against the Defendants. The claims will not include expenses attributable to mental or emotional distress, or expenses that were reimbursed through another source, such as another insurance plan or Medicare.

14.3    Within 30 days following the Effective Date, Class Counsel will mail (i) a notice of opportunity to file claims as approved and ordered by the Court in substantially the form of Exhibit J and (ii) a claim form substantially in the form of Exhibit K, to all Class Members or their legal representatives. The claim form will contain the amount of the claim which Class Counsel have calculated is owed, using available claims experience data provided by Medco, MedImpact, Honeywell and Class Members. Class Counsel will notify the Defendants of the date of such mailing and file an appropriate affidavit of mailing with the Court.

14.4    For 60 days after mailing of the notice of opportunity to file claims, Class Members or their authorized representatives may agree to the claim amounts set forth on the claim forms or submit documented claims to Class Counsel. After the expiration of this 60-day period, Class Members' claims will no longer be accepted. A claim will be appropriately documented if an Class

19

Member or legal representative submits medical or pharmacy bills or records from an insurance carrier or other health care provider or governmental entity that show expenses that he or she incurred. Within seven (7) days following the Effective Date, Class Counsel will provide Mark IV a representative sample of the claims evidence that Class Counsel has for each Class Member as of the Effective Date.

14.5     No distribution will be made from the Common Fund for the benefit of any deceased Class Member unless (i) the Class Member has a living spouse at the time that the proposed distribution is determined, or the (ii) estate or surviving trust or similar authority of such deceased Class Member files a claim.

14.6     Class Counsel will review all timely claims and determine those claims that are appropriately documented and otherwise appropriate for reimbursement from the Common Fund. Before payment, Class Counsel shall, at the request of any Defendant, provide to such Defendant all documentation supporting claims for reimbursement for review. Class Counsel will pay 100% of Authorized Claims incurred for the period beginning January 1, 2004. If, after payment of these claims the Common Fund has sufficient funds, 90% of each Authorized Claim incurred for the period from September 1, 2002 through December 31, 2003 will be paid. If not, each such Authorized Claim will be satisfied by the distribution of an amount equal to the claim multiplied by a fraction, the numerator of which is the total remaining in the Common Fund and the denominator of which is the total amount of all Authorized Claims.

14.7     Within 90 days after mailing of the notice of opportunity to file claims, Class Counsel will prepare and send to the Defendants a report that explains which claims are Authorized Claims and in what amounts. Following such notice to the Defendants, Class Counsel will prepare a form of

order setting forth the proposed disposition of the Common Fund, in a form substantially similar to Exhibit L.

14.8    Within 120 days after mailing of the notice of opportunity to file claims and before seeking Court approval of the order described in ¶14.7, Class Counsel will mail to Class Members a Court-approved notice in a form substantially similar to Exhibit M, describing the proposed distribution and establishing a 30-day period for Class Members to file with the Court written objections to the proposed distribution. If written objections are received, the Court may schedule a hearing at which it will resolve such objections. If no such objections are received, the Court will enter this order.

14.9    Upon entry of this order, Class Counsel will notify the Defendants of Class Counsel's readiness to distribute the Common Fund. If no objection is made within seven days, Class Counsel will distribute such checks as provided in the order, together with a letter from Class Counsel substantially in the form of Exhibit N.  After the distribution of all checks, Class Counsel will prepare and file a final accounting with the Court, with a copy to the Defendants.

14.10    If there remains at the end of 90 days after the date that money from the Common Fund is distributed un-cashed or undeliverable Authorized Claims checks, such amounts will be used to provide a second pro-rata payment to persons who filed and received payment for Authorized Claims but have not had those claims paid up to 90%.

14.11    If any amount remains in the Common Fund after all Authorized Claims incurred for the period beginning January 1, 2004 have been paid in full and all other Authorized Claims have been paid at 90%, any remaining amount will be returned to Mark IV, on behalf of Honeywell, within 30 days of such determination.

14.12  The Defendants agree to cooperate in providing all pertinent and necessary information needed by Class Counsel to calculate, evaluate and verify claims. The Defendants will, however, have no responsibility for the administration of the payment of Authorized Claims.

15.    *Costs and Attorneys' Fees*

15.1    The Parties have reached no agreement relative to costs or attorneys' fees.

15.2    Class Counsel will file a motion for attorneys' fees within 14 days after entry of the Judgment.

15.3    The Defendants reserve their rights, including any rights on appeal, to dispute whether any attorneys' fees or costs are recoverable under 29 U.S.C. § 1132(g), or on any other basis, as well as the number of hours that might be recoverable and the rate(s).

15.4    Neither the Class Representatives nor Class Counsel will seek attorneys' fees for any work related to administering the Common Fund as described in ¶¶14.6 and 14.11.

16.    *Conditions of Settlement*

16.1    This agreement is subject to the following conditions:

16.1.1  The Court entering the order of preliminary approval described in ¶ 6 without material modification.

16.1.2  The Court entering the Judgment and that Judgment becoming Final without material modification.

16.1.3  There is an Effective Date.

16.2    If any of the conditions specified in ¶ 16.1 are not fulfilled, this agreement will be terminated unless all of the Defendants, within 30 days from the date that the failure of a condition becomes known to them, provide written notice to Class Counsel of their intent to proceed.

17.    *Effect of Disapproval and Termination*

In the event this agreement is terminated or fails to become effective for any reason, then within 10 days thereafter, if Mark IV, on behalf of Honeywell, has transferred monies to establish the Common Fund, all such monies plus any interest earned will be returned to Mark IV on behalf of Honeywell.    In such event, the positions of the parties to this agreement will be deemed to have reverted to what they were as of the date and time immediately before the execution of this agreement and they will, except as otherwise expressly provided herein, proceed in all respects as if this agreement and related orders had not been executed.    Each party agrees that in the event that this agreement is terminated or fails to become effective, it will not offer or attempt to place in evidence, or otherwise refer to, this agreement, the negotiations which led to its signing or its termination, or failure to become effective in any subsequent proceeding or otherwise.

18.    *Miscellaneous Provisions*

18.1    The exhibits attached hereto are incorporated herein.

18.2    This agreement may be amended or modified only by a written instrument signed by the Class Representatives, Class Counsel and each of the Defendants.    Any such amendment that would materially affect the level of health insurance benefits will be effective only if approved by the Court.

18.3    This agreement constitutes the entire agreement between the Parties.

18.4    The Class Representatives authorize Class Counsel to take all appropriate action required or permitted to be taken by the Class Representatives pursuant to this agreement to effectuate its terms, and also authorize Class Counsel to enter into any modifications or amendments

to this agreement on behalf of them that Class Counsel deems appropriate from the date this agreement is signed until the Judgment is entered.

18.5    This agreement will be binding upon and inure to the benefit of the successors and assigns of the Parties.

18.6    This Agreement, any documents referred to herein, any resolution of any dispute hereunder, whether by the Magistrate Judge or by mutual agreement of the parties, or any action effectuating this agreement, shall be inadmissible and shall not be accorded any preclusive effect whatsoever as against any of the Defendants hereto in any other lawsuit or administrative proceeding, whether currently pending or commenced at some time in the future, brought by or on behalf of any Class Member or any other person arising out of any agreement between the UAW and one or more of the Defendants, except the Bendix Guaranty.

18.7    Motor Components, BAM, Purolator, ArvinMeritor and Mark IV shall have no obligation to provide any health insurance benefits or any life insurance benefits to any of the Class Members and will not be obligated to make any payments to any Class Members, except as set forth in paragraphs 10.1 and 14.1 of this Agreement. Motor Components, BAM, Purolator, ArvinMeritor and Mark IV shall have no administrative duty or fiduciary duty with respect to the provision of health care benefits or life insurance benefits as set forth in paragraphs 9, 10 and 11. None of the Defendants are guarantors with respect to any of the obligations owed by any of the other Defendants pursuant to this agreement; provided, however, that nothing in this agreement shall affect the right of any Defendant to seek reimbursement or indemnification against any other Defendant, or preclude any Defendant from seeking to enforce its rights of reimbursement or indemnification against any other Defendant under any separate agreement(s).

24

18.8    All terms of this agreement will be governed and interpreted according to the laws of New York, except to the extent that federal law pre-empts application of New York law.

18.9    This agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF the parties hereto have caused this agreement to be executed by themselves or their duly authorized attorneys.


**FOR THE CLASS:**

By: _____
        William A. Wertheimer, Jr.
        30515 Timberbrook Lane
        Bingham Farms, MI  48025

Dated: _____9/14/05_____

25

**FOR HONEYWELL INTERNATIONAL INC.:**

By: _____

Joseph J. Costello
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103

Dated: ___9/15/05___

**FOR BAM ENTERPRISES, INC.:**

By: _____

Hugh Carlin
Gross Shuman Brizdle & Gilfillan PC
465 Main Street, Suite 600
Buffalo, NY 14203

Dated: 9/15/05

**FOR MOTOR COMPONENTS, LLC:**

By: _____

Hugh Carlin
Gross Shuman Brizdle & Gilfillan PC
465 Main Street, Suite 600
Buffalo, NY 14203

Dated: 9/15/05

**FOR MARK IV INDUSTRIES, INC.:**

By: _____

John W. Allen
Varnum, Riddering, Schmidt & Howlett, LLP
215 North Rose Street
Kalamazoo, Michigan 49007

Dated: _September 14, 2005_


**FOR PUROLATOR PRODUCTS COMPANY:**

By: _____

John W. Allen
Varnum, Riddering, Schmidt & Howlett, LLP
215 North Rose Street
Kalamazoo, Michigan 49007


Dated: _September 14, 2005_


**FOR ARVINMERITOR, INC.:**

By: _____

John W. Allen
Varnum, Riddering, Schmidt & Howlett, LLP
215 North Rose Street
Kalamazoo, Michigan 49007


Dated: _September 14, 2005_

**THE CLASS REPRESENTATIVES:**

_James LaForest_
James LaForest

Dated: 9/21/05

_Robert Lintz_
Robert Lintz

Dated: 9/30/05

_Ralph G Miner_
Ralph Miner

Dated: Sept 23, 2005

_Laverne R Spencer_
Laverne Spencer

Dated: 9-26-05

_Irene Wesolowski_
Irene Wesolowski

Dated: 9-27-05

_Mary Ala_
Mary Ala

Dated: Sept 21/05

29